**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

QUINTON LEE AMEY,                    )
                                     )
            Petitioner,              )
                                     )
vs.                                  )        **Case No. 11-CV-258-TCK-TLW**
                                     )
ROBERT PATTON, Director,[1]          )
                                     )
            Respondent.              )

## OPINION AND ORDER

Before the Court is the amended 28 U.S.C. § 2254 habeas corpus petition (Dkt. # 15) filed

by Petitioner, a state prisoner appearing pro se. Respondent filed a response (Dkt. # 17) and

provided the state court record necessary for resolution of Petitioner's claims (Dkt. # 19). Petitioner

filed a reply (Dkt. # 20). Petitioner also filed a request for a ruling (Dkt. # 38). For the reasons

discussed below, the petition for writ of habeas corpus is denied. Accordingly, Petitioner's request

for ruling is moot.

## *BACKGROUND*

On August 26, 2008, around 11:00 p.m., Ninaree Furch-King and her daughter, T.K., were

walking to Moe's, a convenience store located near the intersection of 6th Street and Lewis Avenue

in Tulsa, Oklahoma. Furch-King was approximately 20 feet in front of her daughter as they walked

along the sidewalk. When they got to the area of 3rd Street and Lewis, they heard a man yelling out

to them from across the street, "come here, come here." Furch-King and T.K. did not respond and

---

[1]Since Petitioner is currently incarcerated at Cimarron Correctional Facility, a private prison, the proper respondent in this case is Robert Patton, Director of the Oklahoma Department of Corrections. See Rule 2, Rules Governing Section 2254 Cases. For that reason, the Court Clerk shall be directed to substitute Robert Patton, Director, in place of Jim Keith, Warden, as party respondent in this matter.

the man ran across the street and cornered Furch-King and T.K. on the sidewalk. Furch-King and T.K. testified that he was a black man with braids, was not wearing a shirt, and was wearing dark Dickies and blue plaid boxer shorts. Furch-King had seen two young, white men go down an alley and she turned in an effort to locate the men and ask for help. When she turned away, the man raised his hand and pointed a gun at her and said, "I'll blow your F'ing brains out." T.K. stepped between the man and her mother and said, "I'm not gonna let you shoot my momma." Furch-King turned around and went back to her daughter. The man began to beat his chest and arm with the gun and said "I'm a security guard. I can help you rather than white people messing with you." Furch-King and T.K. escaped[2] from the man and went to a nearby house to call 911.

Tulsa Police Department (TPD) Officer Brian Filby responded to the 911 call reporting a black man without a shirt pointing a deadly weapon. En route, a man flagged down Filby and told him there was a black man in the street waiving a gun around. Filby arrived in the area and saw a man who fit the physical description of the suspect standing in the front yard of a house, except he was wearing a shirt. That man was Petitioner. Filby testified that after he arrested Petitioner, T.K. and Furch-King identified him as the man who approached them and had a gun. Petitioner was not in possession of a gun when he was arrested, nor did police find a gun after searching the general area where Petitioner was arrested.

Based on these facts, Petitioner was charged by amended information in Tulsa County District Court, Case No. CF-2008-4299, with Feloniously Pointing a Firearm (Count I) and Possession of a Firearm After Former Conviction of a Felony (AFCF) (Count II). (Dkt. # 19-7, O.R.

---

[2]The record is not clear how Furch-King and T.K. escaped. T.K. testified that she and her mother split up and ran around Petitioner. (Dkt. # 19-5, Tr. Vol. II at 246-47). Furch-King testified that "[h]e finally started listening to a reason . . . [and] ran across the street." Id. at 285.

at 57). A jury found Petitioner guilty of both counts and, at the conclusion of the second stage, recommended sentences of thirty-five (35) years imprisonment for Count I and fifteen (15) years imprisonment for Count II. Id. at 80-82. The trial court sentenced Petitioner in accordance with the jury's recommendation and ordered the sentences to be served consecutively. Id. at 65-69. Attorney Marny Hill represented Petitioner at trial.

Petitioner, represented by attorney Stuart W. Southerland, perfected a direct appeal to the Oklahoma Court of Criminal Appeals (OCCA). (Dkt. # 17-1). Petitioner raised six (6) propositions of error, as follows,

| | |
|---|---|
| Proposition One: | The evidence was insufficient to support Appellant's convictions. |
| Proposition Two: | The use of hearsay testimony violated the Confrontation Clause of the Sixth and Fourteenth Amendments to the United States Constitution, as well as corresponding provisions of the Oklahoma Constitution. |
| Proposition Three: | It was error for the court to refuse to permit inquiry into the nature of the alleged victim's prior felony conviction for feloniously pointing a firearm. The court's decision violated the Oklahoma Rules of Evidence as well as Appellant's right to confront witnesses guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. |
| Proposition Four: | Appellant received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution. |

1. Failure to investigate the facts of Ninaree Furch-King's prior gun charge.

2. Failure to secure Ninaree Furch-King's mental health records.

3. Failure to offer the taped interview as evidence of Quinton Amey's sobriety.

| | |
|---|---|
| Proposition Five: | Appellant's convictions in both Counts I and II violated the double punishment provisions of Oklahoma statutory law. |

Proposition Six: Appellant's sentence should be modified.

(Dkt. # 17-1). In an unpublished Summary Opinion, filed April 30, 2010, in Case No. F-2009-291, the OCCA affirmed Petitioner's judgment and sentence. (Dkt. # 17-3).

On April 28, 2011, Petitioner filed his petition for writ of habeas corpus (Dkt. # 1). In an Order dated November 9, 2011, this Court determined the petition was a "mixed petition" and ordered Petitioner to file an amended habeas petition to delete the unexhausted claims or risk dismissal of the petition. (Dkt. # 14). On December 1, 2011, Petitioner filed an amended petition. (Dkt. # 15). In the amended petition, Petitioner raises the same six grounds for relief he raised on direct appeal. Respondent argues that the OCCA's rulings on Grounds I, II, and IV were not contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. (Dkt. # 17). Respondent also argues that Grounds III, V, and VI are matters of state law not cognizable on habeas review. Id.

*ANALYSIS*

A. **Exhaustion/Evidentiary hearing**

As an initial matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Petitioner presented his claims to the OCCA on direct appeal. Petitioner exhausted his state remedies.

In addition, Petitioner has not met his burden of proving entitlement to an evidentiary hearing. See Williams v. Taylor, 529 U.S. 420 (2000); Miller v. Champion, 161 F.3d 1249 (10th Cir. 1998).

**B.     Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 386 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions."  White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (citations omitted).

When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).  An unreasonable application by the state courts is "not merely wrong; even 'clear error' will not suffice."  White, 134 S. Ct. at 1702 (citing Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)).  The petitioner "'must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  Id. (quoting Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011); see also Metrish v. Lancaster, 133 S. Ct. 1781, 1787 (2013)).

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of

any indication or state-law procedural principles to the contrary." Richter, 131 S. Ct. at 784-85.

Section 2254(d) bars relitigation of claims adjudicated on the merits in state courts and federal

courts review these claims under the deferential standard of § 2254(d). Id. at 784; Schriro v.

Landrigan, 550 U.S. 465, 474 (2007). Here, Petitioner presented his habeas claims to the OCCA

on direct appeal. Because the OCCA addressed Petitioner's claims on the merits, the Court will

review these claims under the standards of § 2254(d).

### 1. Insufficient evidence to support conviction (Ground I)

In Ground I, Petitioner claims there was insufficient evidence to support his convictions.

(Dkt. # 15 at 4). Petitioner argues that the "witnesses changed their testimony significantly between

the time of the alleged crime and trial." Id. Petitioner outlines numerous instances of discrepancies

between the trial testimony of T.K. and Furch-King and both of their written police statements and

T.K.'s testimony at the preliminary hearing. Id. at 19-23. Petitioner argues that the jury "apparently

ignored" the discrepancies and proceeds to outline, what he calls, "the truth." Id. On direct appeal,

the OCCA concluded "that when viewed in the light most favorable to the State, any rational trier

of fact could have found the essential elements of the crimes charged to exist beyond a reasonable

doubt." (Dkt. # 17-3 at 2). Respondent argues this decision was "not contrary to or an unreasonable

application of federal law." (Dkt. # 17 at 5).

In a habeas proceeding, the Court reviews the sufficiency of the evidence "in the light most

favorable to the prosecution" and asks whether "any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319

(1979). "This standard of review respects the jury's responsibility to weigh the evidence and to

draw reasonable inferences from the testimony presented at trial." Dockins v. Hines, 374 F.3d 935,

939 (10th Cir. 2004) (citing <u>Jackson</u>, 443 U.S. at 319). The Court "impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." <u>Jackson</u>, 443 U.S. at 319. The Court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." <u>Grubbs v. Hannigan</u>, 982 F.2d 1483, 1487 (10th Cir. 1993).

Petitioner was charged and convicted of Feloniously Pointing a Firearm, in violation of OKLA. STAT. tit. 21, § 1289.16, and Possession of a Firearm AFCF, in violation of OKLA. STAT. tit. 21, § 1283. (Dkt. # 19-7, O.R. at 53). Jury Instruction No. 19 instructed the jury that the State must "prove[] beyond a reasonable doubt each element of the crime." (Dkt. # 19-7, O.R. at 104).

Under Oklahoma law, a person is guilty of Possession of a Firearm AFCF (Count II) if that person has a prior felony conviction and knowingly and willfully possesses "any pistol, imitation or homemade pistol, altered air or toy pistol, . . . or any other dangerous or deadly firearm." <u>See</u> <u>id.</u> at 113; <u>see</u> <u>also</u> OKLA. STAT. tit. 21, § 1283(A). To satisfy its burden of proof, the State offered the following evidence and testimony to support a conviction of Possession of a Firearm AFCF. T.K. and Furch-King testified that Petitioner approached them from the other side of the street. (Dkt. # 19-5, Tr. Vol. II at 239-41). Furch-King testified that she turned away from Petitioner to search for two young white men she had seen walk down an alley, and after turning, heard her daughter say, "I'm not gonna let you shoot my momma." <u>Id.</u> at 279-281. Furch-King went back to where her daughter was standing and realized Petitioner had a gun in his hand as he was beating his chest and arm. <u>Id.</u> at 282. T.K. also testified that Petitioner had a gun in his hand when he began hitting his chest and arm. <u>Id.</u> at 245-46. T.K. testified that she had no reason to think the gun was not real. <u>Id.</u> at 243. Furch-King also testified that she believed it to be a real gun "[b]ecause [she] could see the bullets from the revolver." <u>Id.</u> at 284. Officer Filby testified that a man flagged him down and

told him there was a man fitting Petitioner's physical description in the street waving a gun. Finally, at the second stage of the trial, the State incorporated all of the evidence from the first stage, id. at 386, and the trial judge admitted into evidence a certified judgment and sentence showing Petitioner was previously convicted of a felony. Id. at 384. Petitioner also testified and admitted that he was convicted of that same felony, unauthorized use of motor vehicle. (Dkt. # 19-5, Tr. Vol. II at 402).

Under Oklahoma law, a person is guilty of Feloniously Pointing a Firearm (Count I) when that person,

> willfully or without lawful cause point[s] a . . . pistol, or any deadly weapon, whether loaded or not, at any person or persons for the purpose of threatening or with the intention of discharging the firearm . . . or for any purpose of injuring, either through physical injury or mental or emotional intimidation . . . or in anger or otherwise.

OKLA. STAT. tit. 21, § 1289.16. The State offered the following testimony and evidence to support Petitioner's conviction of Feloniously Pointing a Firearm. T.K. testified that Petitioner approached her and her mother from the other side of the street. (Dkt. # 19-5, Tr. Vol. II at 239-41). After Petitioner stopped them and her mother turned to walk away, T.K. testified that Petitioner pulled out a gun, pointed it at her mother and said, "I'll blow your F'ing brains out." Id. at 244. T.K. said she stepped in front of Petitioner, placing herself between Petitioner and her mother. Id. T.K. also testified that she was scared during the incident. Id. at 246. After Furch-King returned to where T.K. and Petitioner were standing, she testified that she was in "[f]ear for [her] life and [her] daughter's life" and that she would not have been afraid had she believed Petitioner to be holding a toy gun. Id. at 290. On cross-examination, defense counsel attempted to impeach T.K. and Furch-King by exposing inconsistencies in their testimony and accounts of the incident.

On habeas review, this Court must "give[] full play to the responsibility of the trier of fact [to] fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable

inferences from basic facts to ultimate facts." <u>Jackson</u>, 443 U.S. at 319. The jury observed the witnesses and could evaluate their demeanor. The trial court instructed the jury on the responsibility to determine the credibility of each witness and how to consider the inconsistent statements of T.K. and Furch-King during the deliberations. (Dkt. # 19-7, O.R. at 93, 101). Though there were several inconsistencies in T.K.'s and Furch-King's trial testimony when compared to their prior statements, the testimony regarding the possession of a gun and Petitioner's actions with the gun were consistent. After a review of the record and the evidence in a light most favorable to the State, a reasonable jury could have found proof beyond a reasonable doubt that Petitioner was guilty of feloniously pointing a firearm and possession of a firearm. The "jury's resolution of the evidence . . . is within the bounds of reason." <u>Grubbs</u>, 982 F.2d at 1487. Petitioner fails to show the OCCA's decision was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. <u>See</u> 28 U.S.C. § 2254(d). Habeas relief on Ground I is denied.

### 2. Use of hearsay violated the Confrontation Clause (Ground II)

In Ground II, Petitioner claims the use of hearsay testimony violated his rights protected by the "Confrontation Clause of the Sixth and Fourteenth Amendments of United States Constitution, as well as corresponding provisions of the Oklahoma Constitution." (Dkt. # 15 at 6). Petitioner's claim focuses on the statements made by the man on the street to Officer Filby. To the extent Petitioner is seeking habeas relief under the Oklahoma Constitution, that request is denied. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). Petitioner argues that when an error regarding the admissibility of evidence "is constitutional in nature, the State must persuade this Court that the error was harmless beyond a reasonable doubt." (Dkt. # 15 at 26 (citing <u>Chapman v.</u>

California, 386 U.S. 18, 24 (1967))).  Petitioner further argues "the Confrontation Clause guarantees a defendant's right to confront those 'who bear testimony' against him."  Id. at 28 (citing Crawford v. Washington, 541 U.S. 36 (2004)).  The OCCA found the "statement made to police by the man on the street was admissible under the excited utterance exception to the hearsay rule and was not testimonial as it was made to enable police assistance to meet an ongoing emergency."  (Dkt. # 17-3 at 2).  The OCCA concluded "the admission of this statement did not violate Appellant's right to confrontation."  Id. (citing Davis v. Washington, 547 U.S. 813, 822 (2006)).  Respondent argues this decision was not contrary to or an unreasonable application of federal law.  (Dkt. # 17 at 11).

During Officer Filby's testimony on direct examination, he offered a statement made by an unidentified man on the side of the street.  Filby testified that as he was responding to the 911 call, he saw a man "frantically waiving [sic] his arms" trying to get Filby's attention.  (Dkt. # 19-5, Tr. Vol. II at 311).  Filby stated the man was "very excited and loud, definitely like something was wrong."  Id. at 312.  The man told Filby "there was a black male down the street with a gun. . . . [He] had braids and no shirt."  Id.  The trial court admitted this testimony over repeated objections by defense counsel.  Id. at 168-171, 312.  The trial court reasoned that Crawford likely did not apply because it was "a description to a police officer, directly after an event, under the stress of the event," and thus not a testimonial statement.  Id. at 170.  The court ultimately determined "the offer of proof from Officer Filby is enough to support the basis for an excited utterance" and admitted the statement under the excited utterance hearsay exception.  Id. at 170.  The OCCA affirmed the trial court's ruling.  (Dkt. # 17-3).

The Sixth Amendment Confrontation Clause guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  Crawford,

541 U.S. at 38.  When a petitioner raises a claim that his right to confront witnesses against him was violated, the Court must "employ a multi-part inquiry to determine if the right to confrontation has been violated. [The Court] examine[s] (1) whether the challenged evidence is hearsay; (2) whether it is testimonial; and (3) if the evidence is testimonial hearsay, whether its introduction was harmless error."  United States v. Mendez, 514 F.3d 1035, 1043 (10th Cir. 2008) (citing United States v. Summers, 414 F.3d 1287, 1299-1303 (10th Cir. 2005)).  Under Oklahoma law, a statement is hearsay if, during trial, an out of court statement or assertion made by a declarant absent from trial, is offered for the truth of the matter asserted.  See OKLA. STAT. tit. 12, § 2801.  The Supreme Court has held that "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." Crawford, 541 U.S. at 59.  Thus, the focus of the protection afforded by the Confrontation Clause is placed on formal, testimonial statements.

"'Testimony' . . . is typically a solemn declaration of affirmation made for the purpose of establishing or proving some fact.  An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." Id. at 51.  After Crawford, the Supreme Court further explained that,

> [s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

Davis v. Washington, 547 U.S. 813, 822 (2006).  The Tenth Circuit formulated its own definition of a testimonial statement after recognizing that the Supreme Court "declined to attempt 'to produce an exhaustive classification of all conceivable statements – or even all conceivable statements in

11

response to police interrogation – as either testimonial or nontestimonial.'" <u>United States v. Smalls</u>, 605 F.3d 765, 776 (10th Cir. 2010) (quoting <u>Davis</u>, 547 U.S. at 822). It stated,

> Synthesizing <u>Crawford</u> and <u>Davis</u>, we might today formulate a definition of a testimonial statement which reads: a formal declaration made by the declarant that, when objectively considered, indicates the primary purpose for which the declaration was made was that of establishing or proving some fact potentially relevant to a criminal prosecution. Or, . . . [a] formal statement is testimonial if a reasonable person in the position of the declarant would objectively foresee that the primary purpose of the statement was for use in the investigation or prosecution of a crime. <u>See</u> <u>Summers</u>, 414 F.3d at 1302.

<u>Smalls</u>, 605 F.3d at 778.

Petitioner attempts to support his argument with reliance on <u>Melendez-Diaz v. Massachusetts</u>, 557 U.S. 305 (2009). Petitioner argues the Supreme Court "made it clear that it is not necessary for a 'testimonial' witness to directly accuse a defendant of a crime." (Dkt. # 15 at 29). In <u>Melendez-Diaz</u>, the Court found the certificates written by the analysts of the forensic evidence (e.g., laboratory reports), "are functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.'" <u>Melendez-Diaz</u>, 557 U.S. at 310-11. Even though the reports did not identify Melendez-Diaz by name, the Court concluded "the analysts were aware of the . . . evidentiary purpose" of the reports, resulting in the conclusion that they "were testimonial statements, and the analysts were 'witnesses' for purposes of the Sixth Amendment." <u>Id.</u> at 311. Petitioner argues that even though the man on the street did not identify him by name, just like the reports in <u>Melendez-Diaz</u>, he was deprived of the opportunity to determine "whether [the man] saw something or had been told that something happened, or saw the whole thing from a hundred yards away," or if he would "have taken one look at [Petitioner] and told the police that they had the wrong guy." (Dkt. # 15 at 31).

Petitioner's argument is unpersuasive. "The circumstances of the encounter provide important context for understanding [the man's] statements to the police." Michigan v. Bryant, 131 S. Ct. 1143, 1165 (2011). Filby was responding to a 911 call in the general area. (Dkt. # 19-5, Tr. Vol. II at 307). The call reported a black man with braids, wearing no shirt and blue pants, pointing a deadly weapon. Id. at 307-08. The unidentified man on the street was waving his arms frantically to catch Filby's attention as he drove towards the location of the call. Id. at 311. The man's demeanor was "very excited and loud, definitely like something was wrong." Id. at 312. He gave Filby a physical description that matched the description relayed from the 911 dispatcher and told Filby that the man with the gun was "two blocks west" of their location. Id. Based on this information, Filby went directly to the area in search of the suspect. Id. at 313.

From this description of events, the Court "cannot say that a person in [the man's] situation would have had a 'primary purpose' to establish or prove past events potentially relevant to later criminal prosecution." Bryant, 131 S. Ct. at 1165 (citations omitted). Though Filby did not testify whether he asked any questions of the man on the street, it is clear that the stop and any questions asked by Filby were "necessary to enable [Filby] 'to meet an ongoing emergency.'" Id. at 1166 (citations omitted). Given the context of the out-of-court statement, the statement squarely falls into the "ongoing emergency" category of nontestimonial hearsay statements. The Court concludes these statements were not testimonial hearsay and the Confrontation Clause did not bar their admission at Petitioner's trial.

Finally, in his reply brief, Petitioner argues that the "OCCA erred in failing to determine [] the reliability of hearsay for purposes of its admission under limited due process of the Oklahoma Confrontation Clause of the 6th Amendment." (Dkt. # 20 at 6). Petitioner argues further the

Confrontation Clause compels a witness "to stand face to face with the jury in order that they may look at him an[d] judge by his demeanor upon the stand and the manner in which he gives testimony whether he is worthy of belief." Id. at 7 (citing Mattox v. United States, 156 U.S. 237, 242-43 (1895); Pointer v. Texas, 380 U.S. 400, 404 (1965)). Finally, Petitioner argues that without this hearsay testimony, "the testimony of [T.K. and Furch-King] standing alone would have never been sufficient to satisfy the jury." Id.

To the extent Petitioner raises a new claim for habeas review, the claim, first raised in Petitioner's reply, is not properly before the Court. See Thompkins v. McKune, 433 F. App'x 652, 659-60 (10th Cir. 2011) (unpublished)[3] (citing Tyler v. Mitchell, 416 F.3d 500, 504 (6th Cir. 2005); Jackson v. Duckworth, 112 F.3d 878, 880 (7th Cir. 1997)). Even if the claim were properly before the Court, the claim would be denied. Mattox allowed a prior statement "to be admitted [based] on the fact that the defendant had had, at the first trial, an adequate opportunity to confront the witness." Crawford, 541 U.S. at 57 (noting the witness was now deceased). In Ohio v. Roberts, 448 U.S. 56 (1980), the Supreme Court placed considerable reliance on Mattox when holding a statement by "a hearsay declarant . . . is admissible only if it bears adequate 'indicia of reliability.'" Roberts, 448 U.S. at 66. However, in Crawford, the Court turned away from the reliability test in Roberts because (1) it "depart[ed] from historical principles [and] admit[ted] statements consisting of ex parte testimony upon a mere reliability finding"; (2) allowed a jury to hear evidence "untested by the adversary process, based on a mere judicial determination of reliability"; and, (3) the Roberts framework was "unpredictable" and saw "inconsistent application." Crawford, 541 U.S. at 37. Had

---

[3]This and other unpublished court decisions are cited as persuasive authority, pursuant to Tenth Circuit Rule 32.1.

the OCCA based its decision on the reliability of the man's statements in determining whether Petitioner's right to confrontation had been violated, its decision would have conflicted with the Supreme Court's ruling in <u>Crawford</u>. Therefore, since the OCCA properly relied on the Supreme Court's ruling in <u>Davis v. Washington</u> to determine the statements did not violate Petitioner's right to confrontation, the OCCA did not err in failing to determine the reliability of the out-of-court statements. Petitioner fails to show, nor does this Court find, that the OCCA's decision was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. Habeas relief is denied on Ground II.

### 3. Restriction on use of impeachment evidence violated Confrontation Clause (Ground III)

In Ground III, Petitioner claims the trial court erred when it "refus[ed] to permit inquir[y] into alleged victim's priors." (Dkt. # 15 at 7). On direct appeal, Petitioner argued "[w]hen the Sixth Amendment right of confrontation is impaired by restrictions on cross-examination, the error may be deemed harmless only if this Court finds beyond a reasonable doubt that it did not affect the outcome of the case." <u>Id.</u> at 32-33 (citing <u>Chapman v. California</u>, 386 U.S. 18, 23-24 (1967)). Petitioner also argued that the "court's decision violated the Oklahoma Rules of Evidence." <u>Id.</u> at 32. The OCCA found the "trial court did not abuse its discretion in restricting defense counsel's cross-examination of [the] witness as any possible relevance regarding the nature of the witness's prior conviction was outweighed by its prejudicial value." (Dkt. # 17-3 at 2-3). It also found that Petitioner's right to confrontation was not violated. <u>Id.</u> at 3. Respondent argues this is a matter of state law and "nothing about the OCCA's holding rendered Petitioner's trial so fundamentally unfair as to deprive Petitioner of his federal constitutional rights." (Dkt. # 17 at 19).

To the extent Petitioner is arguing the state courts violated Oklahoma law, that claim is not cognizable for habeas review. Estelle, 502 U.S. at 67-68. To the extent Petitioner argues he was denied his right of confrontation protected by the federal constitution, the Court finds, for the reasons discussed below, Petitioner was not deprived of his right of confrontation by the reasonable limitations the trial court placed on the cross-examination of Furch-King.

Two months before trial, defense counsel filed a "Notice of Intent to Use Evidence of Other Crimes and/or Intention to Impeach with Prior Convictions" (Notice). (Dkt. # 19-7, O.R. at 36). In the Notice, Petitioner identified five prior "bad acts" or convictions of Furch-King.[4] Id. Counsel argued the "prior convictions are admissible to impeach the witness as they are crimes which involve dishonesty and/or false statement." Id. In the State's Response and Motion in Limine, the State argued the misdemeanor convictions were not admissible under the state statute and were inadmissible character evidence, and the nature of the felony should not be allowed at trial because it would "serve [only] to prejudice the jury and confuse them as to the issue to be decided." Id. at 60-61. The trial court granted the State's request and limited defense counsel to eliciting "[o]nly the fact that she is a prior felon" and not the nature of the crime. (Dkt. # 19-5, Tr. Vol. II at 166). Additionally, the trial court allowed inquiry into the misdemeanor shoplifting charge and told

---

[4]Petitioner identified the following prior bad acts or convictions, as follows:

CF-93-4092, Tulsa County: Assault and Battery Upon a Police Officer, Public Drunk.
TR-95-3929, Tulsa County: DUI, Resisting Arrest, No Insurance.
#1605312, Tulsa Municipal Court: Shoplifting (Date 8-1-1997).
CM-2003-3789, Tulsa County: Malicious Injury to Property, Public Drunk.
CF-2003-3360, Tulsa County: Feloniously Pointing a Weapon, Recklessly Handling a Firearm, Resisting an Officer.

(Dkt. # 19-7, O.R. at 36).

defense counsel, "if something comes up in the context of this case . . . and you think [the nature of the felony conviction] becomes more relevant, you can ask to approach." Id. at 167.

"A defendant's Confrontation Clause rights are violated when he is prohibited from engaging in otherwise appropriate cross-examination designed to elicit the witness' bias and a reasonable jury might have received a significantly different impression of the witness' credibility." United States v. Geames, 427 F.3d 1333, 1338 (10th Cir. 2005) (citing United States v. Toles, 297 F.3d 959, 967 (10th Cir. 2002) (citing Delaware v. Van Arsdall, 475 U.S. 673, 680 (1986))). The Confrontation Clause "'guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" Van Arsdall, 475 U.S. at 679 (citation omitted). Thus, "[a] violation occurs when a 'reasonable jury might have received a significantly different impression of [the witness's] credibility had [the defendant] been permitted to pursue his proposed line of cross-examination." United States v. Woodard, 699 F.3d 1188, 1197 (10th Cir. 2012) (citation and quotation omitted). Petitioner claims the trial court "misplaced" its concern for prejudice to the State when the court prohibited defense counsel from introducing the nature of Furch-King's 2003 felony conviction of Feloniously Pointing a Weapon. (Dkt. # 15 at 33). He argues "[t]here was no danger to the State that the jury could use evidence of [her] prior conviction for an improper purpose [because] she was not on trial." Id. at 34.

After reviewing the record, the Court concludes the trial court did not unreasonable restrict Petitioner's ability to impeach Furch-King and consequently violate his right of confrontation. The limits placed on cross-examination by the trial court were reasonable and allowed the jury to learn (1) Furch-King had a prior felony conviction, see Dkt. # 19-5, Tr. Vol. II at 287-88; (2) Furch-King was "pretty familiar with handguns," id. at 292; and (3) Furch-King knew there was "a big

difference between a revolver and an automatic" handgun as evidenced by defense counsel's thorough cross-examination of Furch-King on the differences between the two types of guns, id. at 292-94. Based on the testimony given by Furch-King at trial, a reasonable jury would not "have received a significantly different impression" of Furch-King if the jury had known her prior felony was for Feloniously Pointing a Weapon. Woodard, 699 F.3d at 1197. The Court concludes that Petitioner's right to confront was not violated by the reasonable limitations placed on the cross-examination and impeachment of Furch-King. Thus, Petitioner was not deprived of a fair trial and he has failed to demonstrate the OCCA's decision was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. See 28 U.S.C. § 2254(d). Habeas relief is denied.

### 4.    Ineffective assistance of trial counsel (Ground IV)

In Ground IV, Petitioner claims he received ineffective assistance of trial counsel. (Dkt. # 15 at 9). Petitioner identifies three instances of ineffective assistance: (1) trial counsel "[f]ail[ed] to investigate the facts of Ninaree Furch-King's prior gun charge"; (2) trial counsel "[f]ail[ed] to secure Ninaree Furch-King's mental health records"; and, (3) trial counsel "[f]ail[ed] to offer the taped interview as evidence of [Petitioner]'s sobriety." Id. at 36-39. The OCCA found that Petitioner "was not denied his Sixth Amendment right to the effective assistance of counsel."[5] (Dkt. # 17-3 at 3). Respondent argues the OCCA's decision was not contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. (Dkt. # 17 at 26).

---

[5]The OCCA also denied Petitioner's motion for an evidentiary hearing on the issue of ineffective assistance of counsel. The OCCA found that Petitioner failed to present "clear and convincing evidence of a strong possibility that counsel was ineffective for failing to identify or use the evidence raised in the motion." (Dkt. # 17-3 at 3 n.1).

To be entitled to habeas corpus relief on his claim of ineffective assistance of trial counsel, Petitioner must demonstrate that the OCCA's adjudication of this claim is an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984). See 28 U.S.C. § 2254(d); Richter, 131 S. Ct. 770. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Richter, 131 S. Ct. at 785 (quoting Williams v. Taylor, 529 U.S. 364, 410 (2000) (O'Connor, J. concurring)). Section 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther." Id. at 786.

Strickland sets out a two-pronged standard for review of ineffective assistance of counsel claims. A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th

Cir. 1999). "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 131 S. Ct. 770, 792 (2011). This Court's review of the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential." Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (noting that a habeas court must take a "highly deferential" look at counsel's performance under Strickland and through the "deferential" lens of § 2254(d)). If this Court concludes Petitioner fails to satisfy one of the two prongs, it does not need to decide whether Petitioner satisfies the other. See Strickland, 466 U.S. at 697 ("there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one").

### a. Failure investigate Furch-King's prior felony

Petitioner first complains trial counsel failed to investigate Furch-King's prior gun charge and "[take the trial judge] up on her offer to reconsider her ruling on the admission of the nature of the offense" of Furch-King's conviction. (Dkt. # 15 at 36). Petitioner argues counsel "should have . . . looked into the circumstances surrounding [the conviction and] would have discovered that [] Furch-King got into a fight with a security guard at an apartment complex." Id. Petitioner alleges that Furch-King threatened the security guard "and pointed her gun at him." Id. at 37. Petitioner claims this incident explains how Furch-King "might have made [] up" her claim that Petitioner "identified himself as a security guard." Id. at 37. Petitioner further argues that "[i]t all comes down to relevancy . . . [and] the underlying facts of Ninaree Furch-King's [] conviction were relevant" under state law. Id. at 37.

At trial, both T.K. and Furch-King testified that Petitioner said he was a security guard. T.K. testified that, as Petitioner was beating his chest with the gun, he said, "I'm a security guard. I can

help you rather than white people messing with you."  (Dkt. # 19-5, Tr. Vol. II at 245-46).  Furch-King testified that Petitioner was "saying obscenities [and] racial slurs" against white people.  <u>Id.</u> at 282.  She also said that Petitioner told them "[i]f they bothering you, I'll go around there and take care of it."  <u>Id.</u> at 283.  Furch-King  also testified that Petitioner said, "I'm a security guard.  I'm here to help you. If anybody messing with you, I will handle it (indicating)."  <u>Id.</u>

Based on the record, the Court finds that Petitioner's claim of ineffective assistance of trial counsel is wholly unsupported.  First, Furch-King's prior conviction of Feloniously Pointing a Weapon was listed in the Notice filed by Petitioner's trial counsel.  (Dkt. # 19-7, O.R. at 36).  Second, the trial court held a hearing on Petitioner's motion.  At the hearing, Petitioner's counsel argued that Furch-King's convictions and bad acts show a pattern that when Furch-King is intoxicated and gets upset at people, she calls the police and "say[s] they pointed a gun at her."  (Dkt. # 19-3, Tr. Hr'g Feb. 9, 2009 at 4).  Trial counsel's argument demonstrates that she investigated the circumstances surrounding Furch-King's prior convictions and bad acts.  Finally, Petitioner's trial counsel cross-examined Furch-King regarding her knowledge of guns and her ability to identify the difference between a revolver and an automatic.  The record clearly reflects that Petitioner's trial counsel was familiar with Furch-King's criminal history and conducted an adequate investigation.

Additionally, Petitioner's argument that this information would explain why Furch-King testified that Petitioner called himself a security guard is unpersuasive.  T.K. also testified that Petitioner waved the gun around and said he was a security guard, though she admitted she did not include that information in her police report.  (Dkt. # 19-5, Tr. Vol. II at 245-46, 261).  Petitioner claims T.K. made up this detail "after talking about the incident with her mother." (Dkt. # 20 at 1).

Whether Petitioner claimed he was a security guard is irrelevant to whether Petitioner pointed a gun at Furch-King and said, "I'll blow your F'ing brains out." It is also irrelevant to whether Petitioner possessed a gun, waved it around, and beat it against his chest. Petitioner's claims are insufficient to support a claim of ineffective assistance of trial counsel. Petitioner was not prejudiced by trial counsel's failure to investigate and Petitioner fails to show the OCCA's decision was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. See 28 U.S.C. § 2254(d). Petitioner is not entitled to habeas relief.

### b.    Failure to secure Furch-King's mental health records

Petitioner next argues that trial counsel was ineffective for failing to investigate Furch-King's mental health history. (Dkt. # 15 at 38-39). Petitioner argues that though he "is speculating to a certain extent, [] his speculation is not without basis in fact." Id. at 38. Petitioner claims that appellate counsel discovered a letter in Furch-King's criminal history, in which Furch-King states she "took 'physic' [sic] meds and has been taking them for several years." Additionally, Petitioner claims Furch-King "had been assigned a legal guardian [in a prior case], suggesting that her mental health problems were serious." Id. at 38-39. Respondent argues that her claims of mental health problems were self-motivated and "even if Ms. Furch-King was mentally ill, [it] has nothing to do with whether Petitioner pointed a gun at her and threatened her." (Dkt. # 17 at 30-31).

Petitioner and Respondent acknowledge that Furch-King's criminal record includes two letters written by Furch-King addressed to District Judges assigned to Tulsa County District Court, Case No. CF-2003-3360. In that case, Furch-King entered a nolo contendere plea to feloniously pointing a weapon. The letters suggest that Furch-King had mental health problems and that her daughter was appointed her legal guardian. (Dkt. # 20 at 22-23). Respondent states that further

investigation into the case file reveals that Furch-King was attempting to withdraw her plea. (Dkt. # 17 at 30). Respondent argues the "content is immediately suspect" because "if she could convince someone of her incompetence, she would be in a good position regarding withdrawal of her guilty plea." Id. Respondent concludes that "[o]nce counsel saw the denial of Ms. Furch-King's motion to withdraw guilty plea, there would be no reason for her to look at any mental health records. The denial shows that the trial court found that Ms. Furch-King[] . . . was competent." Id. Thus, Respondent argues, Petitioner's counsel was not ineffective. Id. at 31.

After reviewing the record, the Court finds that Petitioner's trial counsel was not ineffective for failing to investigate Furch-King's medical records. First, Petitioner fails to explain how Furch-King's alleged mental illness impacted her testimony or perception of events. Petitioner only argues the investigation was necessary to "discredit" her testimony and the "jury would have found her unbelievable [if] properly examined and impeached." (Dkt. # 15 at 15). Petitioner's statements alone are inadequate to support a finding of ineffective assistance. As discussed above, defense counsel conducted a strong cross-examination of Furch-King, weakening her credibility. Even if Furch-King's history of mental health issues should have been raised by defense counsel, Petitioner fails to show there is a reasonable probability that the result of the proceeding would have been different. Petitioner's arguments fail to undermine confidence in the outcome of the jury's verdict in light of the entirety of all the testimony presented at Petitioner's trial.

Petitioner fails to show that trial counsel was ineffective for failing to investigate Furch-King's medical history. As a result, he has failed to demonstrate that the OCCA's decision was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. See 28 U.S.C. § 2254(d). Habeas relief is denied.

### c. Failure to offer taped interview as evidence of Petitioner's sobriety

Petitioner next complains that trial counsel was ineffective for failing to introduce into evidence the video of Petitioner's police interview to rebut the State's claim that Petitioner was intoxicated when he pointed the gun at Furch-King. (Dkt. # 15 at 39-40). Petitioner argues that the video directly contradicts Furch-King's testimony. Id. at 40. He claims the video shows his speech was not slurred and his thoughts were clear. Id. Petitioner also argues the "video was admissible both to impeach the suggestion(s) of intoxication as well as to demonstrate that [Petitioner] appeared sober." Id. at 41. Petitioner concludes by stating the video "was relevant, because the more coherent he appeared, the less believable [T.K.'s and Furch-King's] claim that he was acting crazy or intoxicated becomes." Id. Respondent argues that the decision to not introduce the video was reasonable trial strategy. (Dkt. # 17 at 31).

At trial, Furch-King said she had concern when Petitioner was waving his gun. (Dkt. #19-5, Tr. Vol. II at 284). When the prosecutor asked why she had concern, Furch-King replied, "I was looking at him, and I could tell he was on something." Id. She later stated that Petitioner "kept talking, and he wasn't making no [sic] sense." Id. at 285. Petitioner testified during the second stage of his trial. Id. at 393. Petitioner admitted he approached Furch-King and T.K., but said he did so because he thought they might be in trouble because Furch-King was cussing aloud as she walked down the sidewalk. Id. at 395, 406-07. Petitioner also admitted he was not wearing a shirt and had been drinking that night, but claimed he was not drunk. Id. at 406. Petitioner further testified that his statements to police were the same as those he gave at trial. Id. at 399. When Petitioner testified during the second stage, the jury had already found him guilty of pointing a firearm.

After reviewing Petitioner's claims and the record, the Court finds Petitioner fails to show the OCCA's decision was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. Petitioner's claim that the video would have made T.K.'s and Furch-King's testimony less believable is insufficient to support a claim of ineffective assistance of counsel. In light of his own trial testimony, Petitioner cannot show he was prejudiced by the omission of the video's contents. Petitioner's level of sobriety was not an element of the crimes charged. See Dkt. # 19-7, O.R. at 53-54. Additionally, Petitioner admitted he had been drinking that night and the jury received an instruction on evaluating credibility of witnesses and their testimony. Id. at 93, 117. Finally, Petitioner's trial counsel conducted strong cross-examinations of both T.K. and Furch-King, confronting them with the inconsistencies between their trial testimony and their previous statements. Under the facts of this case, trial counsel's failure to introduce the video to rebut Furch-King's single comment that Petitioner "was on something" does not rise to the level of deficient performance as contemplated by Strickland. Therefore, Petitioner fails to show the OCCA's decision was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. See 28 U.S.C. § 2254(d). Habeas relief is denied.

In summary, Petitioner fails to show that trial counsel performed deficiently in failing to investigate Furch-King's criminal and medical history, and for failing to present at trial the video of Petitioner's police interview. Further, Petitioner has not shown he was prejudiced by any of these alleged failures. Petitioner cannot satisfy the test set for in Strickland. Thus, Petitioner cannot show the OCCA's decision was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d). Habeas relief on Ground IV is denied.

### 5.    State law matters (Ground V and VI)

In Ground V, Petitioner claims his "convictions in both Counts I and II violate the Double Punishment provisions of Oklahoma statutory law."  (Dkt. # 15 at 41).  In Ground VI, Petitioner claims his sentences are excessive and should be modified.  Id. at 45.  The OCCA denied relief on Ground V and found that "[w]hile [Petitioner's] crimes occurred in close proximity to one another, they were based upon separate and distinct acts, with dissimilar elements."  (Dkt. # 17-3 at 3).  The OCCA also denied relief on Ground VI, stating that Petitioner failed to show "the trial court abused its discretion by ordering [Petitioner]'s sentences to be served consecutively."  Id. at 4.  Respondent argues that Grounds V and VI raise matters of state law not cognizable on habeas review.  (Dkt. # 17 at 19, 22).

The Court finds that Ground V is purely a matter of state law and cannot serve as a ground for federal habeas relief.  Estelle, 502 U.S. at 67-68; El Mansouri v. Jones, 235 F. App'x 713, 717 (10th Cir. 2007) (unpublished) (habeas petitioner's claim that convictions violated Oklahoma's statutory prohibition against double punishment involved purely matters of state law and could not serve as grounds for federal habeas corpus relief).  Habeas relief is denied for that reason.

In Ground VI, Petitioner claims his sentence should be modified.  Petitioner was sentenced to thirty-five years on Count I and fifteen years on Count II, to be served consecutively.  Petitioner argues concurrent sentences are appropriate in this case.  (Dkt. # 1 at 47).  A habeas court affords "wide discretion to the state trial court's sentencing decision, and challenges to the decision are not generally constitutionally cognizable, unless it is shown that the sentence imposed is outside the statutory limits or unauthorized by law."  Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2000).  For Count I, Petitioner admitted to four prior convictions and faced a term of twenty (20) years to

life imprisonment. (Dkt. # 19-7, O.R. at 115). He received thirty-five years. For Count II, Petitioner admitted to three prior convictions and faced a term of three (3) years to life imprisonment. Id. at 116. He received fifteen years. Additionally, Oklahoma law provides that sentences are to run consecutively unless otherwise ordered by the trial court. See OKLA. STAT. tit. 22, § 976 ("[i]f a defendant is convicted of two or more offenses, . . . imprisonment upon any one may commence at the expiration of the imprisonment upon any other of the offenses. . . . [T]he sentencing judge shall, at all times, have the discretion to enter a sentence concurrent with any other sentence"). Petitioner's sentences fall within the range allowed by Oklahoma statutes. Habeas relief on Ground VI is denied.

## C. Certificate of appealability

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA is debatable among jurists of reason. See Dockins v. Hines, 374 F.3d 935,

938 (10th Cir. 2004). The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability is denied.

### *CONCLUSION*

After careful review of the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. The Clerk of Court shall note on the record the substitution of Robert Patton, Director, as party respondent in place of Jim Keith, Warden.

2. The amended petition for writ of habeas corpus (Dkt. # 15) is **denied**.

3. Petitioner's motion for ruling (Dkt. # 38) is **moot**.

4. A separate judgment in favor of Respondent shall be entered in this matter.

5. A certificate of appealability is **denied**.

**DATED** this 28th day of July, 2014.

**TERENCE KERN**
**United States District Judge**